Samuel P. Myler (*Pro Hac Vice*)
SMyler@mayerbrown.com
71 South Wacker Drive
Chicago, IL 60606
Telephone: 312.782.0600

Dominique-Chantale Alepin (SBN 241648)
dalepin@mayerbrown.com
Two Palo Alto Square, Suite 300
3000 El Camino Real
Palo Alto, California 94306-2112
Telephone: (650) 331-2000

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Marie E. Horn,<br><br>        Plaintiff,<br><br>        v.<br><br>Northrop Grumman Retirement Plan and Northrop Grumman Benefit Plan Administrative Committee,<br><br>        Defendants. | Case No. 4:14-cv-01679-CW<br><br>DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR BREACH OF FIDUCIARY DUTY, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF<br><br>DATE:  January 29, 2015<br>TIME:  2:00 P.M.<br>CTRM: 2 |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that on January 29, 2015, at 2:00 p.m. in Courtroom 2 of the United States District Court for the Northern District of California, 1201 Clay Street, Oakland, CA, 94612, defendants Northrop Grumman Retirement Plan B, the Northrop Grumman Benefit Plan Administrative Committee, and Northrop Grumman Corporation (collectively, "the Defendants") by and through their attorneys, will appear and request an order dismissing plaintiff Marie E. Horn's First Amended Complaint for Breach of Fiduciary Duty pursuant to Federal Rule of Civil Procedure 12(b)(6).

Plaintiff's Amended Complaint should be dismissed with prejudice. Plaintiff previously admitted that her original complaint was deficient. While Plaintiff was granted leave to amend, her amended complaint completely fails to address the previously admitted defects. The Amended Complaint purports to state a claim for breach of fiduciary duty relating to the administration of an employee benefit plan. The basis for this claim is that Defendants provided her with inaccurate pension estimates in 2003 and 2009, which she purportedly relied on. However, the Ninth Circuit has held that these types of errors are "just the sort of mistake" that cannot form the basis for a breach of fiduciary duty claim. *Gabriel v. Alaska Elec. Pension Fund*, No. 12-35458, 2014 WL 7139686 (9th Cir. Dec. 16, 2014). As the Ninth Circuit recently explained in *Gabriel*, the actuarial soundness of pension plans is "too important" to be jeopardized by allowing individual participants to obtain a personal wind-fall recovery of more than they are entitled to under the terms of a pension plan.

Dated: December 19, 2014

/s/ *Samuel P. Myler*
Samuel P. Myler
*Attorney for Defendants*

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................... 1

II.   FACTUAL ALLEGATIONS SET FORTH IN COMPLAINT ..................... 1

III.  STANDARD OF REVIEW ................................................... 4

IV.  ARGUMENT ................................................................. 4

    A.    Plaintiff has Failed to State a Plausible Claim for "Appropriate Equitable Relief" Under  ADDIN BA \xc <@$st> \xl 17 \s VYPUHY000008 ERISA § 502(a)(3 ........................................................... 5

        1.    Plaintiff is Not Entitled to an Estoppel Order ........................... 6

        2.    Plaintiff is Not Entitled to a Surcharge ................................. 9

        3.    Plaintiff is Not Entitled to a Declaratory Judgment ..................... 10

            a.    Plaintiff is Not Entitled to a Declaration of the Amount Due Under the Plan .................................................. 11

            b.    Plaintiff is Not Entitled to a "Nunc Pro Tunc" Declaration ........ 12

        4.    Plaintiff is Not Entitled to an Accounting .............................. 12

    B.    Plaintiff has Failed to Identify a "Remediable Wrong" .................... 13

        1.    The Erroneous Calculation of Pension Estimates Does Not Qualify as a "Remediable Wrong" ............................................ 13

            a.    The Calculation of Pension Benefit Estimates is Not a Fiduciary Act .................................................. 14

            b.    The Incorrect Calculation of the Benefit Estimates was Not a Breach of Fiduciary Duty ..................................... 15

                (1)    Duty of Loyalty ..................................... 15

                (2)    Duty of Care ........................................ 16

         2.    The Allegedly Improper Plan Amendment ............................. 16

            a.    Plan Amendments are Not a Fiduciary Act ................... 17

            b.    Plaintiff Has Not Identified a Duty to Inform Her of Prospective Changes ........................................ 17

            c.    Plaintiff has Not Adequately Alleged that She was Harmed by the Defendants' Purported Failure to Inform .......... 18

V.   CONCLUSION ............................................................. 18

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Bell Atlantic v. Twombly,*
  550 U.S. 544 (2007).................................................................................4, 12, 17

*Bins v. Exxon Co. USA,*
  220 F.3d 1042 (9th Cir. 2000) ...............................................................18

*Christensen v. Qwest,*
  376 F. Supp. 2d 934 (D. Neb. 2005) .....................................................14

*Christensen v. Qwest Pension Plan,*
  462 F.3d 913 (8th Cir. 2006) .................................................................16

*Cigna Corp. v. Amara,*
  131 S.Ct. 1866 (2011)...................................................................6, 9, 12

*Frahm v. Equitable Life Assur. Soc. of U.S.,*
  137 F.3d 955 (7th Cir. 1998) .................................................................16

*Gabriel v. Alaska Elec. Pension Fund,*
  No. 12-35458, 2014 WL 7139686 (9th Cir. Dec. 16, 2014)...........................*passim*

*Greany v. Western Farm Bureau Life Ins. Co.,*
  973 F.2d 812 (9th Cir. 1992) ...................................................................8

*Great-West Life & Annuity Ins. Co. v. Knudson,*
  534 U.S. 204 (2002).................................................................................13

*Harris v. Ventyx, Inc.,*
  2011 WL 3584498 (E.D. Cal. Aug. 12, 2011) .......................................14

*Hughes Aircraft Co. v. Jacobson,*
  525 U.S. 432 (1999).................................................................................17

*Livick v. The Gillete Co.,*
  524 F.3d 24 (1st Cir. 2009) .....................................................................14

*Loffredo v. Daimler AG,*
  500 Fed. Appx. 491 (6th Cir. 2012).......................................................13

*Mertens v. Hewitt Assocs.,*
  508 U.S. 248 (1993)...................................................................................4

*Moeckel v. Caremark, Inc.,*
  622 F. Supp. 2d 663 (M.D. Tenn. 2007).................................................14

*Sizemore v. PG&E Retirement Plan,*
  939 F. Supp. 2d 987 (N.D. Cal. 2013) .....................................................2

*Skinner v. Northrop Grumman Retirement Plan B,*
673 F.3d 1162 (9th Cir. 2012) ......................................................................9, 10

*Spink v. Lockheed Corp.,*
125 F.3d 1257 (9th Cir. 1997) ...............................................................................7

*Steelman v. Prudential Ins. Co. of Am.,*
Civ. S-06-2746, 2007 WL 1080656 (E.D. Cal. Apr. 4, 2007) ................................12

*U.S. v. Corinthian Colleges,*
655 F.3d 984 (9th Cir. 2011) ...............................................................................2

*Varity Corp. v. Howe,*
516 U.S. 489 (1996)...............................................................................5, 12, 13

STATUTES

29 U.S.C. § 1024(b)(1) ............................................................................................17

29 U.S.C. § 1104(a)(1)............................................................................................15

29 U.S.C. § 1104(a)(1)(B) .......................................................................................16

29 U.S.C. § 1104(a)(1)(D) .......................................................................................10

29 U.S.C. § 1104(a)(3)..............................................................................................5

29 U.S.C. § 1109(a)(1).............................................................................................15

ERISA § 3(21)(A) ....................................................................................................14

ERISA § 502(a)..........................................................................................................5

ERISA § 502(a)(1)(B)........................................................................................11, 12

ERISA § 502(a)(3).......................................................................................... *passim*

OTHER AUTHORITIES

Questions and Answers Relating to Fiduciary Responsibility under ERISA,

29 C.F.R. § 2509.75-8.................................................................................15

## I. **INTRODUCTION**

On April 11, 2014, Plaintiff filed a two count "Complaint for ERISA Pension Benefits" against the Northrop Grumman Retirement Plan B ("the Plan") and the Northrop Grumman Benefit Plan Administrative Committee ("the Administrative Committee"). (Compl., Dkt. 1.) The Plan and the Administrative Committee moved to dismiss Plaintiff's complaint pursuant to Rule 12(b)(6). (Mot. to Dism., Dkt. 13.) Instead of filing a response brief, Plaintiff's counsel filed a two-page "Partial Opposition" in which he admitted that the original complaint "requires some additional allegations" and "may not be well-pled." (Part. Opp. at 1, 3, Dkt. 21.) Plaintiff was given leave to amend, (Order, Dkt. 25), which she did on November 18, 2014. (Am. Compl., Dkt. 31.) However, aside from restyling her complaint as a "First Amended Complaint for Breach of Fiduciary Duty," and adding the Northrop Grumman Corporation ("Northrop") and the Northrop Grumman Benefits Center ("the Benefits Center") as defendants,[1] Plaintiff has simply repled the deficient allegations previously dismissed. Having made no effort to address the pleading deficiencies in the original complaint, Plaintiff's amended complaint should now be dismissed with prejudice.

## II. **FACTUAL ALLEGATIONS SET FORTH IN COMPLAINT**

Plaintiff was employed by Northrop and a Northrop predecessor, Litton Industries, from February 18, 1988 until August 25, 2002. (Am Compl. ¶ 6, Dkt. 31.) While employed by Litton, Plaintiff was a participant in the Litton Retirement Plan and the Litton Financial Security and Savings Program ("the Litton FSSP"). (*Id.*) Following Northrop's acquisition of Litton, Plaintiff became a participant in the Northrop Grumman Retirement Plan B, which was merged

---

[1] While named as a defendant in the Amended Complaint, the Benefits Center is not a separate legal entity capable of being sued. The Benefits Center is a group/department within Northrop Grumman Corporation.

with the Litton Plan.[2] (*Id.*)  The Plan is administered by the Administrative Committee.  (*Id.*)

Plaintiff claims that on April 1, 2003, long before she retired in 2013, Northrop provided her with a "termination package" that included a summary of her benefits.[3] (*Id.*)  The summary of her benefits stated that if Plaintiff transferred her Part I Account Balance, did not withdraw the Litton FSSP deposits, and elected a "straight life" annuity, she would be entitled to a monthly benefit payment of $2,296.76 when her benefits commenced on July 1, 2014.  (Pension Estimates, attached hereto as <u>Exhibit B</u>, at NGC240.)  The benefit summary also stated that "the Plan Administrator reserves the right at any time to correct any error in the calculation to ensure that your pension is paid in accordance with the LRP Plan provisions."  (*Id.*)

Plaintiff claims that she received a "similarly inaccurate benefit summar[y]" on October 23, 2009.  (Am. Compl. ¶ 11, Dkt. 31.)  However, the calculation of this estimate assumed that Plaintiff would ***not*** roll the money in her Litton FSSP over into the Northrop Retirement Plan B. (Pension Estimates, <u>Ex. B</u>, at NGC247.)  Additionally, the October 23, 2009 benefit statement explained that it was based on assumptions provided by Plaintiff and the then-current terms of the Plan.  (*Id.* at NGC246.)   Finally, the 2009 estimate informed Plaintiff that the "[a]ctual benefits payable to you may vary from the amounts on this estimate," that Northrop "reserves the right to correct any errors," and that if the information in the estimate "conflicts with the benefit defined by the Plan, the Plan will prevail."  (*Id.* at NGC246-47.)

---

[2] Relevant sections and appendices from the Northrop Grumman Retirement Plan B are attached hereto as <u>Exhibit A</u>.  While Plaintiff has not attached the Plan to her Amended Complaint, it may nevertheless be considered.  *See, e.g.*, *Sizemore v. PG&E Retirement Plan*, 939 F. Supp. 2d 987, 989 (N.D. Cal. 2013) ("Plaintiff requests judicial notice of two [pension] plans.  These documents are referenced in the complaint.  Judicial notice of the pension plans is therefore **GRANTED**.")

[3] The purportedly inaccurate pension statements are attached hereto as <u>Exhibit B</u> and may be considered in connection with this motion.  The Ninth Circuit has explained that courts "may consider unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document." *U.S. v. Corinthian Colleges*, 655 F.3d 984, 998-99 (9th Cir. 2011).  Plaintiff's claims "necessarily rely" on these allegedly inaccurate estimates.

Notwithstanding the disclaimers in the 2003 and 2009 estimates, Plaintiff claims that she nevertheless relied on those estimates. She alleges that she allowed the funds to remain in her Litton FSSP account and "purchased a home in Florida on the assumption that the estimates were correct." (Am. Compl. ¶¶ 11, 14, Dkt. 31.) However, Plaintiff does not identify any actual harm attributable to her alleged reliance. Specifically, there are no allegations Plaintiff was harmed by purchasing a home in Florida; in fact, Plaintiff does not even state when this home was purchased. Nor are there any allegations that she would have obtained a greater benefit had she removed the funds from her Litton account.

The allegedly inaccurate 2003 and 2009 pension estimates were eventually revised prior to Plaintiff's retirement. Plaintiff maintains that a revised pension estimate she received in 2011 was "significantly lower" than the estimates she received in 2003 and 2009. (*Id.* at ¶ 12.) Plaintiff received a similar revised estimate on March 16, 2012. (*Id.*) Plaintiff does not claim that either the 2011 or 2012 estimates were incorrect.

Plaintiff elected to retire in 2013. (*Id.* at ¶ 8.) When Plaintiff challenged the pension calculation she received at the time she applied for retirement, she was told that the inaccurate 2003 and 2009 estimates were attributable to calculation errors. (*Id.* at ¶11.)

Plaintiff filed suit and brought a claim for "ERISA Benefits" and a separate claim for "Breach of Fiduciary Duty." (Compl. at 1, Dkt. 1.) In response to the Plan and the Administrative Committee's motion to dismiss, Plaintiff admitted her complaint "require[d] some additional allegations[.]" (Part. Opp. at 1, Dkt. 21.) Plaintiff requested and received leave to amend. (Order at 1-2, Dkt. 25.) Plaintiff's Amended Complaint now alleges that the defendants breached their fiduciary duties by providing her with inaccurate pension estimates in 2003 and 2009. (Am. Compl. ¶¶ 11-14, Dkt. 31.) Notably, Plaintiff does not claim her benefits were miscalculated; nor does she claim that the Plan terms entitle her to a more generous benefit

than what she currently receives. Plaintiff simply claims the defendants should be estopped from denying her the benefits set forth in the 2003 and 2009 estimates, (*Id.* at ¶ 22), or should be surcharged for the difference between the benefit she currently receives and the 2003 and 2009 estimates. (*Id.* at ¶ 21.)

Plaintiff also claims that Northrop breached its fiduciary duty when it did not advise her of a forthcoming change in the Plan's formula for crediting funds that are rolled over from her Litton FSSP. (*Id.* at ¶ 15.) According to Plaintiff, had she been informed of the forthcoming change, she would have elected a rollover under the "more advantageous" terms that applied in 2012. (*Id.*) To remedy this alleged breach, Plaintiff requests "an order permitting her to rollover her funds from the FSSP program nunc pro tunc prior to January 1, 2013." (Am. Compl. Prayer for Relief ¶ 4.) As shown below, these allegations do not support a breach of fiduciary duty claim, and her claims as to what she would have done differently are based on nothing more than conjecture and speculation.

## III. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. Fed. R. Civ. P. 12(b)(6). To withstand a Rule 12(b)(6) motion, the complaint must plead "enough facts to state a claim that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).

## IV. ARGUMENT

The Supreme Court has refused to "infer [additional] causes of action in the ERISA context, since that statute's carefully crafted and detailed enforcement scheme provides strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254 (1993) (internal quotations omitted). Accordingly, employee benefit plan participants and beneficiaries must bring their

claims under one of the limited civil enforcement provisions codified in ERISA § 502(a).  While Plaintiff does not identify which provision of ERISA § 502(a) applies, claims such as hers, which seek a personal recovery for an alleged breach of fiduciary duty, must be brought pursuant to ERISA § 502(a)(3).  *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996).  *See also LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248, 256 (2008) (holding that ERISA § 502(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries").

Under ERISA § 502(a)(3) "[a] civil action may be brought . . . to obtain other appropriate equitable relief" to redress "any act or practice which violates any provision of this subchapter or the terms of the plan[.]"  29 U.S.C. § 1104(a)(3).  In order to state a viable claim under this provision, a plaintiff must establish both of the following: (1) a *violation* of ERISA, and (2) that the *relief* sought is "appropriate equitable relief."  *See Gabriel v. Alaska Elec. Pension Fund*, No. 12-35458, 2014 WL 7139686, at *5 (9th Cir. Dec. 16, 2014).  Because Plaintiff has failed to state a plausible set of allegations that could support a finding that *either* of these required elements are met, Plaintiff's Amended Complaint should be dismissed with prejudice.

A. <u>Plaintiff has Failed to State a Plausible Claim for "Appropriate Equitable Relief" Under ERISA § 502(a)(3)</u>

A plaintiff's ERISA breach of fiduciary duty claim "may fail if the plaintiff cannot establish . . . that the remedy sought is 'appropriate equitable relief'."  *Gabriel*, 2014 WL 7139686 (9th Cir. Dec. 16, 2014).[4]  Recently, in *Gabriel v. Alaska Elec. Pension Fund*, the Ninth Circuit discussed the onerous requirements that must be met by a plaintiff in order to obtain equitable relief under ERISA § 502(a)(3).  Analyzed in light of *Gabriel*, the Amended Complaint should be dismissed because Plaintiff cannot plead facts that demonstrate she is entitled to any form of relief available under that section.

---

[4] The Ninth Circuit analyzes ERISA breach of fiduciary duty claims by beginning with whether the plaintiff is entitled to a recognized form of equitable relief.  *Gabriel*, 2014 WL 7139686, at *9 n.5.

## 1.    *Plaintiff is Not Entitled to an Estoppel Order*

In *Gabriel*, the Ninth Circuit squarely rejected the theory that the purported miscalculation of pension benefits is grounds for the equitable remedy of estoppel.  The plaintiff, Gregory Gabriel, worked as an electrician for a number of companies between 1968 and 1975. *Gabriel* 2014 WL 7139686, at *2.  During this time, he was a participant in the Alaska Electrical Pension Plan ("the AEPP") and pension contributions were made to the AEPP on his behalf by his employers.  *Id.*

In late-1996 Gabriel asked the AEPP plan administrator for an estimate of the benefit he would receive if he retired.  *Id.* at *2-3.  The plan administrator responded by stating, incorrectly, that if Gabriel retired he would receive $1,236 per month.  *Id.* at *3.  Gabriel subsequently retired and applied for the $1,236 monthly benefit, which he began receiving in March 1997.  *Id.*

In 2004, the AEPP plan administrator discovered that Gabriel only had eight years of vesting credit—two years less than the ten required under the AEPP.  *Id.*  Accordingly, the plan administrator terminated Gabriel's benefits and threatened to seek reimbursement for the $81,033 he had wrongfully received between March 1997 and 2004.[5]  *Id.*  In response, Gabriel brought an ERISA action against various individuals responsible for administering the AEPP. *Id.*  Gabriel asserted claims under ERISA § 502(a)(3), including claims for equitable estoppel, surcharge, and reformation.  *Id.*

Addressing Gabriel's equitable estoppel claim, the Ninth Circuit acknowledged that under *Cigna Corp. v. Amara*, 131 S.Ct. 1866 (2011), an estoppel order is a form of "appropriate

---

[5] The Northern District of California and its sister district courts have upheld a plan administrator's right to **recoup** pension overpayments despite the fact that those payments had been made years earlier. *See, e.g., Groves v. Kaiser Foundation Health Plan Inc.*, 2014 WL 1285112, at *8 (N.D. Cal. Mar. 24, 2014) (discussing similar cases and refusing to equitably estop a plan administrator from recouping overpayments because doing so would "enlarge Plaintiff's rights against the Plan").  If plan participants are not provided relief in recoupment cases, they surely cannot recover in cases such as this one, where the calculation error was identified years before the plaintiff retired.

equitable relief" under ERISA § 502(a)(3). *Gabriel*, 2014 WL 7139689, at *7. However, the Court explained that Gabriel was required to satisfy both the "traditional estoppel" requirements and the "ERISA estoppel" requirements. *Id.* The Ninth Circuit first identified the "traditional estoppel" requirements as including the following:

> (1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*Id.* The Court then identified the three additional requirements that must be met to maintain an estoppel claim in the ERISA context: "(1) extraordinary circumstances; (2) that the provisions of the plan at issue were ambiguous such that reasonable persons could disagree as to their meaning or effect; and (3) that the representations made about the plan were an interpretation of the plan, not an amendment or modification of the plan." *Id.* (citing *Spink v. Lockheed Corp.*, 125 F.3d 1257, 1262 (9th Cir. 1997) (internal citations omitted). The Court explained that the purpose of these requirements is to "protect the plan's actuarial soundness by preventing plan administrators from contracting to pay benefits to persons not entitled to them under the express terms of the plan." *Id.*

Analyzing Gabriel's equitable estoppel claim, the Court began by reiterating its long-held position that pension estimates and calculation errors are "just the sort of mistake" that do not warrant an estoppel order. *Id.* at *10. ("[A mere] error in calculating benefits is just the sort of mistake that we repeatedly have held cannot provide a basis for equitable estoppel."). The Ninth Circuit held that Gabriel "failed to show that the plan representative's January 1997 letter was an interpretation of ambiguous language in the Plan, rather than a mere mistake in assessing Gabriel's entitlement to benefits." *Id.* The Court held that "[o]n its face, the letter does not provide an interpretation of the Plan, but merely provides the erroneous information that Gabriel

is entitled to benefits of $1,236 per month upon retirement." *Id.* The Court explained: "[A] plaintiff cannot avail himself of a federal ERISA estoppel claim based upon statements of a plan employee which would enlarge his rights against the plan beyond what he could recover under the unambiguous language of the plan itself." *Id.* (citing *Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 822 (9th Cir. 1992)).

Plaintiff's estoppel claim suffers from the same defects identified in *Gabriel*. Specifically, Plaintiff has not alleged that either of the purportedly erroneous pension estimates was attributable to anything other than a mistake in calculating Plaintiff's benefits. Plaintiff has not alleged that the Plan was ambiguous, nor has Plaintiff claimed that the purportedly erroneous estimates were an interpretation of an alleged ambiguity. In fact, Plaintiff acknowledges that the plan administrator explained to her that the estimates were incorrect because of calculation errors. (Am. Compl. ¶ 11.) Furthermore, the 2003 and 2009 estimates both stated that the plan administrator reserved the right to revise the estimates if inconsistent with the Plan terms.[6] (Pension Estimates, Ex. B.) Plaintiff's claim should be dismissed for this reason alone.

Even if Plaintiff's Amended Complaint adequately pled that the estimates were an interpretation of a Plan ambiguity, which it does not, Plaintiff's estoppel claim would nevertheless be subject to dismissal. First, Plaintiff does not allege that any of the defendants knew that the estimates were inaccurate. *Gabriel*, 2014 WL 7139689, at *7 ("the [defendant] must know the facts"). Second, Plaintiff has not alleged that the defendants intended for Plaintiff to rely or act on the estimates. *Id.* (the defendant "must intend that his conduct shall be acted on"). In fact, the estimates themselves belie such a contention. Both the 2003 and the 2009 estimates state that the actual pension benefit may vary and that the actual benefit owed under

---

[6] The estimates also do not state that they are from the plan administrator, who has "***full*** and ***sole***" authority to interpret the plan. (Pension Plan Document, Ex. A, at NGC105.)

the Plan terms controls. (Pension Estimates, Ex. B, at NGC241, NGC246-47.) Finally, Plaintiff has not alleged that she was injured by relying on the erroneous estimates. *Gabriel*, 2014 WL 7139689, at *7 (the plaintiff must "rely on [the defendant's] conduct to his injury"). Even if her allegation that, in reliance on the estimates, she "bought a home in Florida" and chose to leave her funds in the Litton FSSP were true, she has still failed to explain how she was injured by these choices. Having failed to plead facts capable of satisfying any of these requirements, despite having been given the opportunity to correct the deficiencies in her complaint once before, Plaintiff's estoppel claim should be dismissed with prejudice.

### 2. Plaintiff is Not Entitled to a Surcharge

In addition to requesting an estoppel order, Plaintiff also claims that she is "entitled to surcharge [the defendants] for the difference between the erroneous pension estimates and the amount she received." (Am. Compl. ¶ 22.) While the Supreme Court has suggested that the remedy of "surcharge" may be a form of "appropriate equitable relief" under ERISA § 502(a)(3), *Amara*, 131 S.Ct. at 1880, Plaintiff's Amended Complaint does not adequately allege a right to such a remedy.

In *Amara*, the Supreme Court defined "surcharge" as "the power to provide relief in the form of monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *Id.* (citing Restatement (Third) of Trusts § 95 (2009).) However, the remedy of "surcharge" does not serve as a "catch-all" form of relief available for simply any alleged harm. As the Ninth Circuit held in *Skinner v. Northrop Grumman Retirement Plan B*, 673 F.3d 1162 (9th Cir. 2012), and reiterated in *Gabriel*, surcharge can only be used to "hold [a fiduciary] liable for benefits it gained through unjust enrichment or for harm caused as the result of its breach" of a fiduciary duty. *Skinner*, 673 F.3d at 1167; *Gabriel*, 2014 WL 7139689, at *9. Here, Plaintiff is not entitled to the remedy of surcharge because, even if a

defendant constituted a fiduciary with respect to the acts alleged (which as explained below they do not), Plaintiff cannot plausibly plead unjust enrichment or harm to the pension trust.

To proceed under an "unjust enrichment" surcharge theory, the plaintiff must allege that a defendant-fiduciary "gain[ed] a ***benefit*** by breaching his or her [fiduciary] duty." *Gabriel*, 2014 WL 7139689, at *9 (emphasis added). Clearly Plaintiff cannot logically claim that any of the named defendants were unjustly enriched by providing Plaintiff with purportedly inaccurate pension calculations. *Cf. Skinner*, 673 F.3d at 1167 ("Appellants have presented no evidence that the committee gained a benefit by failing to ensure that participants received an accurate [Summary Plan Description]"). None of the defendants stood to gain by providing Plaintiff with allegedly inaccurate pension estimates.

In order to surcharge a fiduciary for "harm caused as the result of its breach," *Skinner*, 673 F.3d at 1167, a plaintiff must identify a "loss of value to the trust or [lost] profits that the trust would have accrued in the absence of the breach." *Gabriel*, 2014 WL 7139689, at *9. Plaintiff cannot plausibly claim that her receipt of inaccurate pension estimates resulted in a loss of value to the trust or prevented the trust from obtaining profits it would have otherwise gained. In fact, granting Plaintiff the relief she seeks—a pension not supported by the Plan's benefit calculation formula—would result in trust losses. Ultimately, ERISA's fiduciary duties require that the plan be administered "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D). A plan administrator cannot disregard this express obligation in order to provide a single participant with a wind-fall benefit at the expense of the trust and its beneficiaries. *Gabriel*, 2014 WL 7139689, at *8 ("The actuarial soundness of pensions funds is, absent extraordinary circumstances, too important to permit trustees to obligate the fund to pay pensions to persons not entitled to them under the express terms of the pension plan.")

### 3. *Plaintiff is Not Entitled to a Declaratory Judgment*

Plaintiff's "Third Claim for Relief" requests two separate declarations: (1) a declaration of "the amount due her under the plan," and (2) a declaration that Plaintiff is "entitled to complete her rollover nunc pro tunc to January 1, 2013." (Am. Compl. ¶ 19, Dkt. 31.) However, these requests are neither well-pled, nor proper under ERISA.

a.    Plaintiff is Not Entitled to a Declaration of the Amount Due Under the Plan

In an apparent attempt to create a case or controversy, Plaintiff states that "[a] dispute has arisen concerning the amount due under the plan . . . because the terms of the plan are sufficiently complex that the true amount due thereunder is not know [*sic*] known with certainty." (*Id.*)  As an initial matter, Plaintiff is simply incorrect that a "dispute has arisen concerning the ***amount due under the plan***[.]"  (*Id.*)  Plaintiff's original complaint, which set forth a claim for benefits,[7] was dismissed with leave to amend.  (Order, Dkt. 25.)  Plaintiff's counsel argued leave to amend was justified because he did not have "enough time . . . to undertake the usual investigation and research" before filing the original complaint.  (Part. Opp. at 1, Dkt. 21.)  Plaintiff was provided the administrative record months prior to filing the Amended Complaint.  (Joint Case Mgmt. Stmt. at 7, Dkt. No. 23.)  However, Plaintiff's "Amended Complaint for Breach of Fiduciary Duty" no longer alleges that Plaintiff is due benefits under the Plan's terms.  Accordingly, Plaintiff does not dispute that she was ultimately provided an accurate calculation of her benefit in accordance with the Plan terms prior to her retirement.[8]

To the extent that Plaintiff's request for declaratory relief could be construed as stating a

---

[7] A plan participant seeking benefits she claims she is entitled to under the terms of an ERISA plan can only bring such a claim pursuant to ERISA § 502(a)(1)(B).

[8] Plaintiff states in her Amended Complaint, as she did in her original complaint, that the "amount due [under the Plan] is not know [*sic*] known with certainty."  (Am. Compl. ¶ 17.) Plaintiff cannot create a genuine dispute by claiming ignorance as to the amount she is owed.

claim for benefits under the Plan, such a claim falls flat. First, it is well-settled that a plaintiff cannot obtain benefits purportedly owed under a plan by bringing a claim for breach of fiduciary duty. *See Variety Corp.*, 516 U.S. at 512. Furthermore, even if Plaintiff had repled, rather than abandoned, her ERISA § 502(a)(1)(B) claim, it is not sufficient to simply state that "it is not know [*sic*] known with certainty," (Am. Compl. ¶ 17), whether the plaintiff is receiving all of the benefits she is entitled to under the plan. *See, e.g. Steelman v. Prudential Ins. Co. of Am.*, Civ. S-06-2746, 2007 WL 1080656, at *7 (E.D. Cal. Apr. 4, 2007) ("A plaintiff who brings a claim for benefits under ERISA ***must identify a specific plan term*** that confers the benefits in question.") (emphasis added). *See also Twombly*, 127 S.Ct. at 1965.

b.  Plaintiff is Not Entitled to a "Nunc Pro Tunc" Declaration

Plaintiff also asks for a declaration that she is "entitled to complete her rollover nunc pro tunc prior to January 1, 2013[.]" (Am. Compl. ¶ 19, Dkt. 31.) Such a declaration is not a form of relief that has been recognized under § 502(a)(3). *See Amara*, 131 S.Ct. 1866 (2011) (discussing the forms of equitable relief available under § 502(a)(3)). Nor has Plaintiff pled any grounds for this Court to grant such relief. As explained below, Plaintiff's single paragraph claim that she was not informed of a "forthcoming" change, does not plead a violation of ERISA's disclosure rules or a "remediable wrong" under ERISA § 502(a)(3), even if the requested nunc pro tunc declaration qualified as "appropriate equitable relief."

### 4.  *Plaintiff is Not Entitled to an Accounting*

Plaintiff also claims she is entitled to "an accounting of the amounts due her." (Am. Compl. ¶ 20, Dkt. 31.) Plaintiff's request for an "accounting" should be dismissed for failure to satisfy Rule 8's pleading standards. To the extent that Plaintiff is requesting an accounting of the amounts due to her under the terms of the Plan, this claim is indistinguishable from a claim for benefits under ERISA § 502(a)(1)(B)—a claim which was abandoned—and must be dismissed.

*See Varity Corp. v. Howe*, 516 U.S. 489, 510-16 (1996) (holding that relief under § 502(a)(3) is only available if there is not adequate relief elsewhere in the statute). As discussed above, the Amended Complaint does not plead a claim for benefits owed under the Plan.

To the extent that Plaintiff's reference to "an accounting of the amounts due her" is construed as a request for an equitable accounting under § 502(a)(3), this claim still must be dismissed. While the Supreme Court has noted that "an accounting for profits" may be available under § 502(a)(3) as a "form of equitable restitution," *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 n.2 (2002), Plaintiff's complaint does not plead facts sufficient to satisfy the tracing requirements identified in *Great-West*. *See Loffredo v. Daimler AG*, 500 Fed. Appx. 491, 499 (6th Cir. 2012) ("To plead claims for [equitable restitution and an accounting] the plaintiffs would have to allege either that the defendants currently (and improperly) possess the assets dispersed from the trust or that they retain profits generated from that property." (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 214 (2002).)

### B. Plaintiff has Failed to Identify a "Remediable Wrong"

In addition to pleading facts sufficient to support a claim that she is entitled to a form of *relief* available under ERISA § 502(a)(3), Plaintiff must also identify a "*remediable wrong*." *Gabriel*, 2014 WL 7139686, at *5. Plaintiff's Amended Complaint identifies two acts which she claims qualify a fiduciary breaches: (1) the alleged miscalculation of Plaintiff's pension estimates, and (2) the alleged failure to "timely advise" Plaintiff of a prospective change to how it credited funds rolled over from the Litton FSSP. Neither of these actions, however, constitute a breach of fiduciary duty under ERISA, and therefore, they fail to support a viable claim under ERISA § 502(a)(3).

### 1. The Erroneous Calculation of Pension Estimates Does Not Qualify as a "Remediable Wrong"

Plaintiff's allegations with respect to the incorrect pension estimates in 2003 and 2009 are insufficient to support a claim for breach of fiduciary duty. First, a viable claim for breach of fiduciary duty under ERISA may, by definition, only be brought against a plan fiduciary. Plaintiff attempts to confuse this threshold issue by offering a variety of non-sequiturs, conclusory statements, and untenable theories for how various defendants may potentially be fiduciaries. (Am. Compl. ¶ 13, Dkt. 31.) These shotgun allegations, particularly those in Paragraph 13 of the Amended Complaint, fail to satisfy Rule 8's requirement that the pleading contain "a short and plain statement of the claim." Even if the allegations satisfied Rule 8, the Amended Complaint must nevertheless be dismissed because, as a matter of law, the calculation of pension estimates is neither a fiduciary act nor a breach of a fiduciary duty.

> a.     The Calculation of Pension Benefit Estimates is Not a Fiduciary Act

Even if Plaintiff's fiduciary allegations did comport with Rule 8, Plaintiff is nevertheless unable to state a claim because, as a matter of law, the calculation of pension estimates is not a fiduciary act. Under ERISA a party is only a fiduciary to the extent that they are engaged in one of the activities set forth in ERISA § 3(21)(A). These activities include: (1) exercising discretionary control over the management of the plan or its assets; (2) offering investment advice with respect to plan assets for a fee; or (3) exercising discretionary authority with respect to the administration of the plan. Courts have consistently held that calculating benefits does not entail fiduciary discretion for purposes of § 3(21)(A).[9] The Department of Labor has likewise

---

[9] *See, e.g., Livick v. The Gillete Co.*, 524 F.3d 24, 29 (1st Cir. 2009) (providing plaintiff "with an estimate of his future pension benefits was not a fiduciary task"); *Harris v. Ventyx, Inc.*, 2011 WL 3584498, at *5 n.5 (E.D. Cal. Aug. 12, 2011) (breach of fiduciary duty claim was not proper because person was not acting as a fiduciary when "estimating the amount of plaintiff's benefits"); *Moeckel v. Caremark, Inc.*, 622 F. Supp. 2d 663, 692 (M.D. Tenn. 2007) ("A fiduciary relationship does not exist where an administrator performs purely ministerial functions such as . . . calculating benefits.") (emphasis added); *Christensen v. Qwest*, 376 F. Supp. 2d 934, 943 (D. Neb. 2005) (collecting cases finding that providing estimates is not a fiduciary act).

characterized the "calculation of benefits" as "purely ministerial." *See* <u>Questions and Answers Relating to Fiduciary Responsibility under ERISA</u>, 29 C.F.R. § 2509.75-8 (noting that persons responsible for the "calculation of services and compensation credits" and the "calculation of benefits" are not ERISA fiduciaries because these are "purely ministerial functions").   None of the defendants qualify as a fiduciary for purposes of this claim because the calculation of Plaintiff's pension estimates was not a fiduciary act.

b.    <u>The Incorrect Calculation of the Benefit Estimates was Not a Breach of Fiduciary Duty</u>

Plaintiff's further fault is that she fails to identify a fiduciary duty that was breached.   To the extent that a person is functioning as a fiduciary, ERISA imposes two general duties: (1) a statutory duty of loyalty, and (2) a statutory duty of care. 29 U.S.C. § 1104(a)(1).   Plaintiff's Amended Complaint fails to support a finding that the preparation of the erroneous pension estimates was a breach of either the fiduciary duty of loyalty or the fiduciary duty of care.

(1)    *Duty of Loyalty*

ERISA's fiduciary duty of loyalty requires a fiduciary to "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries."   29 U.S.C. § 1109(a)(1).   The Amended Complaint does not contain a single allegation that explains how or why the inaccurate calculation of the pension estimates violated the duty of loyalty.   Putting aside Plaintiff's conclusory allegations (*e.g* "these entities all knew, or should have known, that the estimates were materially false") and logical fallacies (*e.g.* "the erroneous pension estimates were provided . . . without any knowledge by those entities that the estimates were true") the Amended Complaint fails to allege anything more than a mistake.   As the Eighth Circuit has unequivocally instructed, "A mistake in the administration of a pension plan is not a violation of the duty of loyalty absent evidence that plan administrators acted in the interests of someone

other than participants and beneficiaries." *Christensen v. Qwest Pension Plan*, 462 F.3d 913, 918 (8th Cir. 2006). Plaintiff has not made such a contention.

(2)  *Duty of Care*

ERISA's fiduciary duty of care requires a fiduciary to act with "the care, skill, prudence, and diligence…that a prudent man acting in a like capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B). The Amended Complaint does not adequately allege a violation of ERISA's duty of care with respect to the purportedly inaccurate pension estimate. Assuming that the calculation of pension estimates qualified as a fiduciary act, which the law precludes, the occasional miscalculation of such estimates, particularly when these estimates were provided to a participant years prior to and subsequently corrected before her retirement, does not qualify as a breach of the duty of care. To hold otherwise would create a regime of strict liability for persons tasked with processing potentially thousands of calculation requests. As the Seventh Circuit has aptly stated:"Efforts to administer any complex plan fall short of the ideal. Some employees of a large firm will receive bad or misleading advice. Many ideas are hard to convey or grasp. Plans are complex, and the possibility of change in the plans makes exposition and decision difficult." *Frahm v. Equitable Life Assur. Soc. of U.S.*, 137 F.3d 955, 960 (7th Cir. 1998). Indeed, Plaintiff has admitted that the Plan is "complex." (Am. Compl. ¶ 17.) Northrop is no different from the example the Seventh Circuit posited; mistakes in calculations inevitably fall prey to the complexity of the Plan and human fallibility. Each one of these mistakes, particularly when these mistakes are corrected as they were here, cannot possibly qualify as a "breach of fiduciary duty" warranting relief that the participant is not otherwise entitled to under the plan terms.

### 2.  *The Allegedly Improper Plan Amendment*

Plaintiff alleges that on January 1, 2013, the Plan changed the manner in which it credited

funds rolled over from the FSSP. Plaintiff claims that the plan administrator breached its fiduciary duty by failing to "timely advise [her] of that change[.]" (Am. Compl. ¶ 15, Dkt. 31.) Plaintiff's one-paragraph conclusory allegation that the plan administrator's failure to *prospectively* inform her of a forthcoming change not only fails to satisfy Rule 8, but also fails to state a claim as a matter of law. *See Twombly*, 127 S.Ct. at 1965 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.")

### a. Plan Amendments are Not a Fiduciary Act

As an initial matter, Plaintiff does not allege that the plan amendment was itself improper. Furthermore, it is well-established that amending a plan is a *settlor* function, not a fiduciary function. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 443 (1999). Accordingly, Plaintiff does not allege, and cannot allege, that the plan amendment was a breach of fiduciary duty. *Id.* (actions relating to amendment of pension plan, such as who is to receive benefits and in what amounts are "settlor" functions that do not implicate fiduciary duties).

### b. Plaintiff Has Not Identified a Duty to Inform Her of Prospective Changes

Turning to Plaintiff's allegation that the plan administrator failed to inform her of that change, Plaintiff fails to identify either a statutory or common law duty to disclose the change at issue. ERISA requires plan administrators to comply with a comprehensive and detailed set of disclosure provisions. With respect to the type of plan amendment at issue here, a plan administrator is required to notify participants of a plan change within 210 days *after* the end of the plan year in which the change is adopted. 29 U.S.C. § 1024(b). On its face, Plaintiff's allegation that the plan administrator breached its fiduciary duty by failing to notify her of a "forthcoming" plan amendment does not qualify as a violation of this disclosure provision.

Furthermore, Plaintiff has failed to adequately plead the existence of an independent fiduciary duty to disclose "forthcoming" changes. The Ninth Circuit has expressly held that "an ERISA fiduciary does not have an affirmative duty prior to final approval and general dissemination of plan changes to volunteer information to [plan participants]." *Bins v. Exxon Co. USA*, 220 F.3d 1042, 1053 (9th Cir. 2000). A plan administrator cannot be expected to identify each individual participant's situation, determine how a possible plan amendment may affect their benefits, and give the participant personal advice regarding roll-over options—all before the plan sponsor is allowed to amend the Plan.

> c.  Plaintiff has Not Adequately Alleged that She was Harmed by the Defendants' Purported Failure to Inform

Finally, Plaintiff's allegation that she was harmed by the plan administrator's purported failure to inform is not well-pled. Plaintiff simply states that had she been informed in advance of the change, she would have completed her rollover "under the more advantageous terms in 2012 instead of 2013." (Am. Compl. ¶ 15.) Plaintiff's conclusory allegation that the 2013 terms are "more advantageous" does not satisfy Rule 8's pleading standards. Further, this allegation is inconsistent with her claim that she had relied on pension estimates that were calculated based on an assumption that the funds would not be rolled over from the Litton FSSP. (Pension Estimates, Ex. B, at NGC247.)

## V.  CONCLUSION

For the foregoing reasons, the defendants respectfully request that this Court grant their motion to dismiss Plaintiff's Amended Complaint with prejudice.

Dated: December 19, 2014

Attorney for Defendants

/s/ *Samuel P. Myler*

Samuel P. Myler (*Pro Hac Vice*)
MAYER BROWN LLP
SMyler@mayerbrown.com
71 South Wacker Drive
Chicago, IL 60606
Telephone: 312.782.0600

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

I certify that on December 19, 2014, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Northern District of California, by using the Court's CM/ECF system. Participants in the case who are registered CM/ECF users will be served via electronic mail by the CM/ECF system.

Dated: December 19, 2014                        */s/ Samuel P. Myler*
                                                 Samuel P. Myler