1  Samuel P. Myler (*Pro Hac Vice*)
2  SMyler@mayerbrown.com
   71 South Wacker Drive
3  Chicago, IL 60606
   Telephone: 312.782.0600
4
   Dominique-Chantale Alepin (SBN 241648)
5  dalepin@mayerbrown.com
   Two Palo Alto Square, Suite 300
6  3000 El Camino Real
   Palo Alto, California 94306-2112
7  Telephone: (650) 331-2000

8  *Attorneys for Defendants*

9                    **UNITED STATES DISTRICT COURT**

10                   **NORTHERN DISTRICT OF CALIFORNIA**

11

12  Marie E. Horn,

13          Plaintiff,                    Case No. 4:14-cv-01679-CW

14      v.                                DEFENDANTS' MOTION TO DISMISS
                                          PLAINTIFF'S SECOND AMENDED
15  Northrop Grumman Corporation and      COMPLAINT FOR MISREPRESENTATION,
    Northrop Grumman Benefit Plan         AND MEMORANDUM OF POINTS AND
16  Administrative Committee,             AUTHORITIES IN SUPPORT THEREOF

17          Defendants.

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD

PLEASE TAKE NOTICE that defendants Northrop Grumman Corporation and the Northrop Grumman Benefit Plan Administrative Committee, by and through their attorneys, hereby request an order dismissing plaintiff Marie E. Horn's Second Amended Complaint for Misrepresentation pursuant to Federal Rule of Civil Procedure 12(b)(6) with prejudice. Plaintiff's Second Amended Complaint fails to remedy the fundamental pleading defects previously identified by this Court. Furthermore, Plaintiff's allegations of fraud are not pleaded, and cannot be pleaded, with the plausibility and specificity required by Federal Rules of Civil Procedure 8 and 9.

Pursuant to the Court's March 27, 2015 Order, this motion shall be decided on the papers. (Order, Dkt. 50 at 15.)

Dated: May 18, 2015                    /s/ *Samuel P. Myler*
                                       Samuel P. Myler
                                       *Attorney for Defendants*

**TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................. 1

II. PROCEDURAL BACKGROUND....................................................................... 2

III. FACTUAL BACKGROUND ................................................................................ 2

IV. STANDARD OF REVIEW ................................................................................... 4

V. ARGUMENT .......................................................................................................... 5

    A. Plaintiff has Failed to State a Claim for "Appropriate Equitable Relief" Under ERISA § 502(a)(3) ........................................................................... 6

        1. Equitable Estoppel .......................................................................... 6

        2. Surcharge ......................................................................................... 7

        3. Reformation ................................................................................... 10

    B. Plaintiff Fails to Identify a Remediable Wrong..................................... 11

        1. Plaintiff Fails to Identify a Violation of ERISA or the Terms of the Plan ........................................................................................... 12

        2. Plaintiff Fails to Identify a Fiduciary Liable for the Purportedly Erroneous Pension Estimates ...................................................... 12

        3. Plaintiff Has Not Adequately Pleaded a Breach of Fiduciary Duty ........ 14

VI. CONCLUSION.................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Cigna Corp. v. Amara*,
  131 S.Ct. 1866 (2011) .................................................................................................... 7, 8, 10

*LaRue v. DeWolff, Boberg & Associates, Inc.*,
  552 U.S. 248 (2008) .................................................................................................................. 5

*Great-West Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002) .................................................................................................................. 8

*Pegram v. Hedrich*,
  530 U.S. 211 (2000) ................................................................................................................ 13

*Varity Corp. v. Howe*,
  516 U.S. 489 (1996) .................................................................................................................. 5

*Gabriel v. Alaska Elec. Pension Fund*,
  773 F.3d 945 (9th Cir. 2014) ............................................................................................. passim

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ............................................................................................. 5, 14

*Skinner v. Northrop Grumman Retirement Plan B*,
  673 F.3d 1162 (9th Cir. 2012) ................................................................................................... 7

*U.S. v. Corinthian Colleges*,
  655 F.3d 984 (9th Cir. 2011) ..................................................................................................... 3

*Coleman v. Nationwide Ins. Co*,
  969 F.2d 54 (4th Cir. 1992) ..................................................................................................... 13

*In re McKesson HBOC, Inc. ERISA Litigation*,
  391 F. Supp. 2d 812 (N.D. Cal. 2005) ...................................................................................... 5

*LT Intern. Ltd. v. Shuffle Master, Inc.*,
  8 F. Supp. 3d 1238 (D. Nev. 2014) ................................................................................. 4, 5, 14

*Sizemore v. PG&E Retirement Plan*,
  939 F. Supp. 2d 987 (N.D. Cal. 2013) ...................................................................................... 3

**Statutes**

Fed. R. Civ. P. 12(b)(6) ................................................................................................................. 4

ERISA § 502(a)(3) ......................................................................................................................... 5

**Treatises**

G. Bogert & G. Bogert, Trusts and Trustees § 862 (rev. 2d ed. 1995) .......................................... 7

## I. **INTRODUCTION**

Yet again, Plaintiff's claims have dramatically changed. While she previously asserted a breach of fiduciary duty claim based on the mistaken overestimation of her pension, Plaintiff now claims this overestimation was an intentional and fraudulent act. (SAC ¶¶ 11, 13, Dkt. 51.) Northrop's motive, Plaintiff asserts, was to "defraud [her] into working for a lower compensation rate than she had been promised by defendants." (*Id.* ¶ 13) This allegation, however, is beyond implausible. As Plaintiff admits, by the time she received any allegedly erroneous pension estimates, she was no longer employed by Northrop. (*Id*. ¶ 6, 10.)

Despite the changing nature of her claims, Plaintiff's Second Amended Complaint for Misrepresentation ("Second Amended Complaint") fares no better than her previous two complaints. Plaintiff does not identify which of ERISA's civil enforcement provisions she is proceeding under, which ERISA provision she claims Defendants violated, or the type of relief she is seeking under ERISA. To the extent Plaintiff intends to bring a claim under ERISA § 502(a)(3), she has again failed to identify either a remediable wrong or an appropriate form of equitable relief. With respect to the latter, Plaintiff's Second Amended Complaint suffers from the same defects previously identified by this Court. Namely, Plaintiff's demand for "compensation in accordance with the erroneous estimates" is unavailable because it requires the plan administrator to pay benefits inconsistent with the terms of the Plan. As for the former, Plaintiff cannot identify a remediable wrong because there are no fiduciary duties associated with the issuance of pension estimates. Additionally, Plaintiff's allegations of fraud and misrepresentation fail to satisfy Rule 9(b)'s heightened pleading requirements: Plaintiff fails to identify what was fraudulent about the pension estimates, how she was harmed, and how her injuries were caused by the fraud.

Despite having amended her complaint twice, Plaintiff comes no closer to pleading a viable claim for relief. Clearly there are no more bites left in this apple. Plaintiff's Second Amended Complaint should be dismissed with prejudice.

## II.  PROCEDURAL BACKGROUND

After challenging Northrop's calculation of her pension benefits, Plaintiff filed a two count complaint asserting claims for: (1) "ERISA Benefits" and (2) "Breach of Fiduciary Duty". (Compl. at 1, Dkt. 1.) In response to Defendants' first motion to dismiss, Plaintiff admitted her complaint was deficient and sought leave to amend, which the Court granted. Plaintiff then filed her First Amended Complaint, which alleged Defendants provided her erroneous pension estimates and failed to inform her of a prospective plan change. (FAC ¶¶ 11-12, 15, Dkt. 31.) It sought relief in the form of an accounting, estoppel, surcharge, and a declaratory judgment. (*Id.* ¶¶ 19-24.) On Defendants' motion, the Court dismissed Plaintiff's First Amended Complaint in its entirety, but gave Plaintiff another opportunity to amend. (Order, Dkt. 50.)

Plaintiff has now filed her "Second Amended Complaint for Misrepresentation." (SAC, Dkt. 51). Plaintiff's latest effort no longer seeks a declaration as to the "amount due her under the plan," (FAC ¶ 19, Dkt. 31), nor does it allege that Defendants failed to inform her of a prospective change. (*Id.* ¶¶ 17-19.) Plaintiff's sole remaining claim relates to the purportedly inaccurate pension estimates she received. However, where Plaintiff previously claimed these inaccurate estimates were attributable to calculation errors, she now claims they were fraudulent overestimations. (SAC ¶¶ 11, 13, Dkt. 51.)

## III.  FACTUAL BACKGROUND

Plaintiff was employed by Northrop and a Northrop predecessor, Litton Industries, from February 18, 1988 until August 25, 2002. (SAC ¶ 6, Dkt. 51.) While employed by Litton, Plaintiff was a participant in the Litton Retirement Plan and the Litton Financial Security and

Savings Program ("the Litton Plan"). (*Id.*) Following Northrop's acquisition of Litton, Plaintiff became a participant in the Northrop Grumman Retirement Plan B ("the Plan"), which was merged with the Litton Plan.[1] (*Id.*) Under the Plan, the Administrative Committee is the named fiduciary and plan administrator. (Plan Document, Dkt. 36-1 at NGC084.) Northrop Grumman Corporation, through the "Northrop Grumman Benefits Center" ("the Benefits Center"), provides routine ministerial (*i.e.* non-fiduciary) services to the Plan. (SAC ¶¶ 6, 9, Dkt 51.)

Plaintiff claims that on April 1, 2003, long before she retired in 2013, (SAC ¶ 7, Dkt. 51), Northrop provided her with a "termination package" that included a summary of her benefits ("the 2003 Estimate").[2] (*Id*. ¶ 10.) The summary of her benefits stated that if Plaintiff transferred her Part 1 Account Balance, did not withdraw certain deposits, and elected a "straight life" annuity, she would be entitled to a monthly benefit payment of $2,296.76 when her benefits commenced on July 1, 2014. (*Id.*) However, the 2003 Estimate also stated that "the Plan Administrator reserves the right at any time to correct any error in the calculation to ensure that your pension is paid in accordance with the LRP Plan provisions." (2003 Estimate, Dkt 36-2 at NGC241.)

Plaintiff also claims that on October 23, 2009, she received a "similarly inaccurate" estimate of her benefits ("the 2009 Estimate"). (SAC ¶ 10, Dkt. 51.) However, the 2009 Estimate contains a number of calculations based on various assumptions, (*see* 2009 Estimate, Dkt. 36-2 at NGC246-48), and Plaintiff does not identify which figure was "similarly inaccurate"

---

[1] Relevant sections and appendices from the Northrop Grumman Retirement Plan B can be found in the record at Dkt. 36-1. *See, e.g., Sizemore v. PG&E Retirement Plan*, 939 F. Supp. 2d 987, 989 (N.D. Cal. 2013) ("Plaintiff requests judicial notice of two [pension] plans. These documents are referenced in the complaint. Judicial notice of the pension plans is therefore **GRANTED**.").

[2] The 2003 and 2009 Estimates can be found in the record at Dkt. 36-2. The Court may consider these documents when ruling upon Defendants' motion to dismiss because they are referenced by the Second Amended Complaint and are central to Plaintiff's claims. *See U.S. v. Corinthian Colleges*, 655 F.3d 984, 998-99 (9th Cir. 2011).

or "fraudulent." Furthermore, the assumptions used to generate the 2009 Estimate differed from the assumptions used to generate the 2003 Estimate.[3] The 2009 Estimate also informed Plaintiff that her actual pension at retirement may vary from the estimated amount and that Northrop "reserve[d] the right to correct any errors." (2009 Estimate, Dkt. 36-2 at NGC246-47.)

On July 6, 2011 and March 16, 2012, Northrop provided Plaintiff with updated pension estimates. (SAC ¶ 10, Dkt. 51.) Plaintiff claims that these pension estimates, purportedly issued to her while she was planning her retirement, were "significantly lower than both the 2003 and 2009 pension calculations." (*Id*.) However, Plaintiff does not identify specifically how much lower the 2011 and 2012 estimates were from the 2003 and 2009 calculations.

Plaintiff elected to retire in 2013 and applied for her pension from Northrop. (SAC ¶ 7, Dkt. 51.) The benefit calculation she received was again lower than the 2003 and 2009 Estimates. (*Id*. ¶ 10) When Plaintiff challenged the 2013 pension calculation, she was informed that the 2003 and 2009 estimates were based on certain calculation errors. (*Id*.) Plaintiff ultimately accepted the pension offered by Northrop, but claims that it is less than the 2003 and 2009 estimates. (*Id*.) However, Plaintiff does not identify the amount of the difference between what she currently receives and the 2003 and 2009 estimates.

## IV.   STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. Fed. R. Civ. P. 12(b)(6). When a plaintiff alleges fraud or misrepresentation, as is the case here, their complaint is legally sufficiently only if they meet both the "plausibility" standard of Rule 8(a) and the heightened pleading requirements of Rule 9(b). *LT Intern. Ltd. v. Shuffle Master, Inc.*, 8 F. Supp. 3d 1238, 1243 (D. Nev. 2014) (collecting cases and finding that "it is well settled in the

---

[3] For example, the 2009 Estimate states that it was based on Plaintiff's "personal information on file, the assumptions [she] entered on October 23, 2009, and the [then] current terms of the NG Retirement Plan B. Actual benefits payable to you may vary from the amounts on this estimate." (2009 Estimate, Dkt. 36-2 at NGC246.)

Ninth Circuit that misrepresentation claims are a species of fraud, which must meet Rule 9(b)'s particularity requirement."). *See also*, *In re McKesson HBOC, Inc. ERISA Litigation*, 391 F. Supp. 2d 812, 821 n.8 (N.D. Cal. 2005) ("In addition, when a plaintiff claims that a defendant's fraud constitutes a breach of fiduciary duty, courts may apply the heightened pleading standards of Federal Rule of Civil Procedure 9(b)."). Under Rule 9(b), claims must be plead with particularity—*i.e.* the plaintiff must provide the "who, what, when, where and how" of the misconduct charged. *LT Intern.*, 8 F. Supp. 3d at 1243. This includes an explanation as to "what is false or misleading about the purportedly fraudulent statement, and why it is false." *Id.* When particular averments of fraud are insufficiently pled under Rule 9(b), a district court must "disregard" or "strip" those averments from the claim and examine only the remaining allegations. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1105 (9th Cir. 2003).

V. **ARGUMENT**

While Plaintiff does not identify which ERISA civil enforcement provision she is proceeding under, it is beyond dispute that her claim, which seeks a personal recovery, may only be brought pursuant to ERISA § 502(a)(3). *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996); *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248, 256 (2008) (holding that ERISA § 502(a)(2) "does not provide a remedy for individual injuries distinct from plan injuries"). A plaintiff alleging a violation of ERISA § 502(a)(3) must establish both: (1) a ***violation*** of ERISA, and (2) that the ***relief*** sought is "appropriate equitable relief." *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 954 (9th Cir. 2014). As set forth below, Plaintiff's Second Amended Complaint should be dismissed with prejudice because she has failed to plead allegations sufficient to support a finding that ***either*** of these required elements are met.

    A.    **Plaintiff has Failed to State a Claim for "Appropriate Equitable Relief" Under ERISA § 502(a)(3)**

Courts often begin their analysis of ERISA § 502(a)(3) claims by considering whether the remedy sought qualifies as "appropriate equitable relief" under ERISA. *Gabriel*, 773 F.3d at 958 n.5. While Plaintiff's First Amended Complaint at least identified the types of relief she was seeking—an accounting, estoppel, surcharge, and a declaration—the Second Amended Complaint is completely lacking in this regard. However, examining each of the three forms of relief deemed appropriate by the Ninth Circuit in *Gabriel* establishes that Plaintiff is unable to satisfy the equitable relief prong of an ERISA § 502(a)(3) claim.

### 1. *Equitable Estoppel*

In *Gabriel*, the Ninth Circuit identified "equitable estoppel" as a form of "appropriate equitable relief" under ERISA § 502(a)(3). *Gabriel*, 773 F.3d at 955. As this Court noted, to obtain an equitable estoppel order: "(1) the party to be estopped must know the facts; (2) he must intend that his conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; (4) he must rely on the former's conduct to his injury." (Order at 7, Dkt. 50 (quoting *Gabriel*, 773 F.3d at 955).) The Court further noted that in the ERISA context, there are "additional requirements." (*Id*.) These additional requirements are "extraordinary circumstances," that the provisions of the plan at issue were ambiguous such that reasonable persons could disagree as to their meaning or effect, and that the representations about the plan were an interpretation of the plan, not an amendment or modification of the plan. *Gabriel*, 773 F.3d at 957.

In the Court's order dismissing Plaintiff's First Amended Complaint, the Court found that Plaintiff was not entitled to an estoppel order because she was seeking benefits that were inconsistent with the terms of the Plan. (Order at 8, Dkt. 50.) Plaintiff's Second Amended Complaint does not address this fundamental problem in any way. Yet again, Plaintiff fails to plead facts sufficient to establish that under the terms of the Plan she is entitled to anything other

than what she has received. *See Gabriel*, 773 F.3d at 956 ("The purpose of this requirement is to protect the plan's actuarial soundness by preventing plan administrators from contracting to pay benefits to persons not entitled to them under the express terms of the plan."). Plaintiff also does not allege that the Plan is ambiguous in some respect or that the erroneous estimates qualify as an "interpretation" of the Plan. *Id.* at 959. ("On its face, the letter does not provide an interpretation of the Plan, but merely provides the erroneous information that Gabriel is entitled to benefits of $1,236 per month upon retirement."). Accordingly, Plaintiff has yet again failed to establish her right to an equitable estoppel order.

### *2.  Surcharge*

The Ninth Circuit has also recognized "surcharge" as a form of appropriate equitable relief. *Gabriel*, 773 F.3d at 957. However, surcharge is not an appropriate remedy for the type of harms alleged by Plaintiff. As the Ninth Circuit held in *Skinner v. Northrop Grumman Retirement Plan B*, 673 F.3d 1162, 1167 (9th Cir. 2012), and reiterated in *Gabriel*, 773 F.3d at 957, 963, surcharge is only available to remedy wrongs resulting in the loss of trust assets or to prevent the unjust enrichment of the trustee. Indeed, there is no evidence that surcharge was "typically available in equity," *Cigna Corp. v. Amara*, 131 S.Ct. 1866, 1883 (2011), to compensate a beneficiary for a purported misrepresentation. *See* G. Bogert & G. Bogert, Trusts and Trustees § 862 (rev. 2d ed. 1995) (identifying three measures of damages: (1) "loss in value of the trust estate . . . ," (2) "profit [the trustee] has made through his breach of trust," or (3) "profit that would have accrued to the trust had there been no breach of trust"). Plaintiff has not identified either a loss of trust assets or the unjust enrichment of the trustee. Therefore, she is not entitled to the equitable remedy of surcharge.

Even if surcharge qualified as an appropriate remedy for Plaintiff's alleged personal

losses, she must nevertheless plead both actual harm and causation.[4] (*See* Order at 9-10, Dkt. 50.) Plaintiff's Second Amended Complaint is again deficient in this regard. None of the four purported harms identified by Plaintiff are adequately pled, nor were they plausibly caused by Plaintiff's receipt of incorrect pension estimates.

*First,* Plaintiff claims that she "worked for a lower rate of compensation than she had been promised by her employer," and that she "continued to work for Northrop Grumman Corporation or entities affiliated with it instead of looking for better paying work elsewhere." (SAC ¶ 15(a),(c), Dkt. 51.) These claims are implausible. The first purportedly erroneous pension estimate Plaintiff received was in 2003, (*id.* ¶ 10), a year ***after*** she was terminated by Northrop and ten years before she elected to retire from her subsequent employer. (*Id.* ¶ 6-7.) Furthermore, Plaintiff does not identify what "rate of compensation" she should have received. Nor does she explain how she was harmed by failing to "look[] for better paying work elsewhere."

*Second*, Plaintiff claims that, "[i]n 2005 she purchased a home in Florida which has since lost value in the economic downturn." (SAC ¶ 15(b), Dkt. 51.) This bare-bones allegation is neither plausible nor legally sufficient to establish harm and causation. Even if it were true that Plaintiff's Florida home lost value since it was purchased in 2005, there is no evidence other than Plaintiff's bald assertion that the erroneous pension estimates caused her to purchase the home. Furthermore, the home's loss in value was certainly not caused by Defendants—it was caused by the economic downturn. Plaintiff does not allege that Defendants made any misrepresentation about her home. Finally, Plaintiff does not seek, and is not entitled to, relief for this purported harm. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210 (2002) (explaining

---

[4] While the Supreme Court correctly noted in *Cigna* that courts have not typically required a showing of detrimental reliance, *Cigna*, 131 S.Ct. at 1881, the absence of such a requirement is presumably attributable to the fact that surcharge was not typically used to remedy injuries a plaintiff personally suffered due to an alleged misrepresentation.

prohibition on "legal" relief in ERISA § 502(a)(3) cases.)

*Third*, Plaintiff claims that her election to retire in 2013 "resulted from the acts of defendants in misrepresenting the computation of the amount of [her] retirement benefits to the point where [she] could no longer rely upon the computation of the value of her retirement benefits by defendants." (SAC ¶ 7, Dkt. No. 51.) Retirement, however, is not a harm. Furthermore, Plaintiff's claim that her decision to retire resulted from her purported inability to "rely upon the computation of the value of her retirement benefits by defendants" is not plausible. Why would uncertainty regarding retirement security cause a person to retire? Also, as the Court pointed out when it dismissed Plaintiff's First Amended Complaint, Plaintiff received revised estimates prior to her 2013 retirement that accurately reflected the amount of her benefits. (Order at 10, Dkt. 50.)

*Fourth*, Plaintiff claims that in reliance upon the 2003 Estimate, she "determined not to withdraw her deposits [from the Litton Plan], but to allow them to remain in the Plan, with the intent of obtaining the retirement benefits as stated in the benefit summary dated April 1, 2003 provided to her." (SAC ¶ 9, Dkt. No. 51.) Plaintiff's intent to "obtain[] the retirement benefits as stated in the [2003 Estimate]" is irrelevant. Instead, Plaintiff must show how she was specifically harmed by her decision to keep the deposits in the Litton Plan. Furthermore, Plaintiff's claim that she "determined not to withdraw her deposits" in reliance upon the information in the 2003 Estimate is implausible because the benefit summary did not even provide her with the option to withdraw those deposits. (*See* Dkt. 36-2 at NGC244 ("You are eligible only for the columns that show a benefit amount on the enclosed Benefit Summary,"), and NGC240 (Columns B, D).)

In sum, not only has Plaintiff failed to identify either a loss to the trust or an unjust enrichment of the trustee, as required by the Ninth Circuit in both *Skinner* and *Gabriel*, Plaintiff

has also failed to plead facts sufficient to establish the requirements of actual harm and causation. Accordingly, Plaintiff is not entitled to the remedy of surcharge.

### 3. *Reformation*

In *Cigna Corp. v. Amara*, the Supreme Court found that "[t]he power to reform contracts . . . is a traditional power of an equity court," and accordingly, is "appropriate equitable relief" under ERISA § 502(a)(3). *Cigna Corp.*, 131 S.Ct. at 1880. However, a court will only reform an instrument (*i.e.* a trust or contract) in the case of either mistake or fraud. *Gabriel*, 773 F.3d at 955.

Reformation under a mistake theory is inappropriate here for the same reason identified by the Ninth Circuit in *Gabriel*. Specifically, "the Plan itself does not contain an error." *Gabriel*, 773 F.3d at 961. Under a mistake theory, the plaintiff must demonstrate that either: (1) the trust's settlor was mistaken as to the law or the facts, this mistake affected the terms of the trust, and there is evidence of the settlor's true intent; or (2) both parties were mistaken about the terms of a contract and reforming the contract is appropriate to "capture the terms upon which the parties had a meeting of the minds." *Id*. Plaintiff has not alleged that the trust's settlor, Northrop, was mistaken as to the law or the facts related to the terms of the Plan. Nor has Plaintiff set forth any allegations that Northrop's "true intent" in designing the Plan differs from the terms ultimately adopted. Plaintiff also has not alleged that the parties had a "meeting of the minds" with regards to terms of the Plan different from those currently in force.

Under a fraud theory, a plaintiff must demonstrate that either: (1) a trust was procured from the settlor by wrongful conduct, such as undue influence, duress, or fraud, or (2) the plaintiff's assent to a contract was induced by the defendant's misrepresentations as to the terms of the contract and he was justified in relying on these misrepresentations. *Id.* Plaintiff has not alleged that the Plan was adopted by Northrop as a result of wrongful conduct. Plaintiff also has

not alleged Northrop misrepresented the terms of a contract. Indeed, the purportedly erroneous pension estimates did not relate to the terms of the Plan. Further, Plaintiff cannot plausibly claim that the erroneous pension estimates were intended to induce her to assent to the Plan. As Plaintiff admits, she did not receive them until *after* she was terminated by Northrop. (SAC ¶ 10, Dkt. 51). Finally, Plaintiff would not be justified in relying on these supposed "misrepresentations" because the only terms upon which Plaintiff may reasonably rely are the terms of the Plan itself. *See Gabriel*, 773 F.3d 956 ("[A] plaintiff may not bring an equitable estoppel claim that would result in a payment of benefits that would be inconsistent with the written plan . . . because such a result would contradict the writing and amendment requirements of [ERISA].") (internal quotations omitted). This is particularly true when the purported interpretation of the terms is offered by someone other than the plan administrator. (*See* Plan Document, Dkt. 36-1 at NGC093 (granting plan administrator "sole discretionary authority" to interpret plan).)

Having failed to set forth facts sufficient to establish her entitlement to either estoppel, surcharge, or reformation, Plaintiff cannot establish the "appropriate equitable relief" requirement of her ERISA § 502(a)(3) claim. Accordingly, Plaintiff's Second Amended Complaint should be dismissed with prejudice.

**B.  Plaintiff Fails to Identify a Remediable Wrong**

In addition to failing to allege facts sufficient to demonstrate her right to "appropriate equitable relief," Plaintiff's Second Amended Complaint fails to identify a "remediable wrong." *Gabriel*, 773 F.3d at 954 (plaintiff must establish there was a "remediable wrong" she seeks to remedy by obtaining "appropriate equitable relief").

*1.  Plaintiff Fails to Identify a Violation of ERISA or the Terms of the Plan*

As an initial matter, ERISA does not recognize a stand-alone claim for misrepresentation

or fraud. To state a claim under ERISA § 502(a)(3), a plaintiff must allege a violation of either: (1) ERISA Subchapter I, or (2) the terms of the plaintiff's benefit plan. 29 U.S.C. § 1132(a)(3). Plaintiff's Second Amended Complaint does not identify a single provision in ERISA Subchapter I or a single plan term Defendants could have violated. Plaintiff simply states that the Northrop Benefits Center misrepresented the amount of her pension by providing her with purportedly erroneous pension estimates. Plaintiff must at least identify which provision of the Plan or of ERISA Defendants have violated.

### 2. *Plaintiff Fails to Identify a Fiduciary Liable for the Purportedly Erroneous Pension Estimates*

In the event that the Court construes Plaintiff's Second Amended Complaint as intended to state a claim for breach of fiduciary duty under ERISA, Plaintiff nevertheless fails to adequately allege the elements of such a claim.[5] It is axiomatic that a claim for breach of fiduciary duty under ERISA § 502(a)(3) requires Plaintiff to identify a fiduciary. Based on the allegations Plaintiff has set forth, it is beyond dispute that neither Defendant could having been acting in a fiduciary capacity.

Under ERISA, a party is a fiduciary only to the extent that they are engaged in a "fiduciary act." ERISA provides that fiduciary acts include: (1) exercising discretionary control over the management of the plan or its assets; (2) offering investment advice with respect to plan assets for a fee; or (3) exercising discretionary authority with respect to the administration of the plan. 29 U.S.C. § 1002(21)(A) (describing circumstances under which a person may be deemed a "fiduciary" for ERISA purposes). As this Court noted, a person is not a fiduciary unless they are "acting in the capacity of manager, administrator, or financial adviser to a 'plan'[.]" (Order

---

[5] It is not clear whether Plaintiff is stating a claim for breach of fiduciary duty. While her previous two complaints at least referenced such a claim, the word "fiduciary" does not appear once in the Second Amended Complaint. Defendants and the Court are left to assume, based on the claims set forth in her prior two complaints, that Plaintiff is attempting to assert such a claim.

at 12, Dkt. 50) (quoting *Pegram v. Hedrich*, 530 U.S. 211, 222 (2000).)   Fiduciary status is not an "all-or-nothing concept." *Coleman v. Nationwide Ins. Co*, 969 F.2d 54, 61 (4th Cir. 1992). Instead, the question is "whether [a] person was acting as a fiduciary (that is, was performing a fiduciary function) ***when taking the action subject to complaint***." *Pegram*, 530 U.S. at 226 (emphasis added).

With respect to Northrop, Plaintiff's Second Amended Complaint merely alleges that the Benefits Center sent Plaintiff allegedly erroneous estimates on Northrop letterhead.  This Court previously found that this allegation was insufficient to support a finding that Northrop was functioning as an ERISA fiduciary.  (Order at 12, Dkt. 50.)  As Defendants have thoroughly explained in their prior briefs, the preparation and distribution of pension estimates is not a fiduciary act, and therefore, does not give rise to fiduciary duties.  (*See* Mot. Dism. at 10, Dkt. 13; Mot. Dism. Am. Compl. at 14, Dkt. 36.)  Plaintiff has not bolstered her allegations regarding Northrop's fiduciary status in any way, and accordingly, she has again failed to state a breach of fiduciary duty claim against Northrop.

Any purported claim for breach of fiduciary duty against the Administrative Committee similarly fails.  There is no evidence that the Administrative Committee created or distributed the pension estimates.  As the Court noted in its order dismissing Plaintiff's First Amended Complaint, Plaintiff "admits that the pension estimates were provided by personnel at the Benefits Center, who perform ministerial tasks, not by the Administrative Committee."  (Order at 13, Dkt. 50.)  Plaintiff's Second Amended Complaint is no different in this regard.  (SAC ¶¶ 5, 7, Dkt. 51.)  Furthermore, even if the Administrative Committee had provided Plaintiff with the pension estimates, it would not have done so in its fiduciary capacity because providing pension estimates is not a fiduciary act.  (*See* Order at 12-13, Dkt. 50; *See also*, Mot. Dism. at 10, Dkt. 13; Mot. Dism. FAC at 14, Dkt. 36.)

### *3.     Plaintiff Has Not Adequately Pleaded a Breach of Fiduciary Duty*

As noted above, in order to plead fraud, the claims must be plausible and the party must identify the circumstances of the fraud with particularity. *LT Intern.*, 8 F. Supp. 3d at 1243. Plaintiff's Second Amended Complaint fails to meet this standard in a number of regards.  First, as discussed *supra*, (Section IV.A.2), Plaintiff fails to adequately plead harm and causation.

Second, with respect to both the 2003 and 2009 Estimates, Plaintiff fails to identify "what is false or misleading about [these statements] and why [they are] false." *LT Intern.*, 8 F. Supp. 3d at 1243.  Plaintiff has not identified the amount of benefits she is currently receiving or the terms upon which she is receiving them.  Plaintiff does not state what the estimates in 2003 and 2009 should have been.  Plaintiff does not allege that the assumptions used to generate either the 2003 Estimate or the 2009 Estimate were identical to the assumptions used to calculate her current pension benefit.  Plaintiff does not state whether she first received her pension in July 2014, as was assumed in the 2003 Estimate, (2003 Estimate, Dkt. 36-2 at NGC240), or whether she received it earlier (which would require that it be actuarially reduced).  In short, it is impossible to determine what is fraudulent—or even incorrect, for that matter—about either estimate and why.

Third, Plaintiff's vague allegations regarding the "other related entities" she worked for after she left Northrop should be disregarded on the basis that they are not well-pled.  Plaintiff does not identify these entities, explain the nature of their purported relationship to Northrop, or explain why such a relationship is legally relevant.  Similarly, Plaintiff's new allegation that she received "multiple" erroneous pension estimates, in addition to the two she received in 2003 and 2009, is not well-pled and should be disregarded.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged.").

## VI. <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff's Second Amended Complaint should be dismissed with prejudice.

Dated:  May 18, 2015

Attorney for Defendants

/s/  *Samuel P. Myler*

Samuel P. Myler (*Pro Hac Vice*)
MAYER BROWN LLP
SMyler@mayerbrown.com
71 South Wacker Drive
Chicago, IL 60606
Telephone: 312.782.0600

## **CERTIFICATE OF SERVICE**

I certify that on May 18, 2015, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Northern District of California, by using the Court's CM/ECF system. Participants in the case who are registered CM/ECF users will be served via electronic mail by the CM/ECF system.

Dated: May 18, 2015                                                                   /s/ *Samuel P. Myler*
                                                                                                    Samuel P. Myler

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS  -  4:14-CV-01679 CW